UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| LEIGH TILLER, MULHAM HAFIEZ, BENNY GREENE, LAURA FASOLO, and GABRIELLE CROWLEY, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>THE HILB GROUP OPERATING COMPANY, LLC,<br><br>               Defendant. | Case No. 3:23-cv-00759 (JAG) |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT**

Plaintiffs respectfully move for entry of an order granting preliminary approval of this proposed class action settlement consisting of a $1,600,000 non-reversionary common fund, directing notice of the proposed class action settlement to the Settlement Class, and scheduling a hearing to consider final approval of the settlement. For the reasons set forth below, Plaintiffs respectfully request that the Court enter the proposed order granting this motion.

**INTRODUCTION**

Following hard-fought settlement negotiations, a formal mediation, and a subsequent mediator's proposal, the Parties[1] have reached a settlement to resolve claims arising from the Security Incident announced by The Hilb Group Operating Company, LLC in November 2023.

---

[1] The Parties to the Settlement are the Plaintiffs, who are also the proposed Settlement Class Representatives, on behalf of the proposed Settlement Class, and Defendant The Hilb Group Operating Company, LLC ("Hilb Group" or "Defendant"). Capitalized terms used in this memorandum have the same meaning as in the Settlement Agreement ("S.A."), attached hereto as **Exhibit 1**.

The settlement creates a non-reversionary common fund of $1,600,000 for the benefit of the Settlement Class Members. From this Settlement Fund, Settlement Class Members will be able to claim substantial monetary benefits, including: A) Pro Rata Cash Payments estimated to be approximately $75, and B) documented out-of-pocket losses as a result of the Security Incident of up to $5,000 (subject to pro rata adjustment). The Settlement Fund will be used to pay additional necessary benefits, including for a state-of-the-art notice and administration program, and as approved by the Court, service awards to the Settlement Class Representatives and attorneys' fees and expenses. Further, as part of the settlement, Hilb Group agrees to provide written confirmation to Class Counsel of business practices changes taken after the Security Incident to protect the data security of the Class Representatives and the Settlement Class during the term of the claims administration process. Costs associated with these business practices changes shall be paid by Hilb Group separate and apart from the Settlement Fund.

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case. The settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). Plaintiffs thus move for an order preliminarily approving the settlement, directing that notice issue to the Settlement Class, and scheduling a Final Approval Hearing. In support of their motion, Plaintiffs submit the Settlement Agreement (attached as **Exhibit 1**), Declaration of Terence R. Coates in Support of Preliminary Approval of Class Action Settlement ("Coates Decl.") (attached as **Exhibit 2**), and Declaration of Andrea R. Dudinsky of Kroll Settlement Administration, LLC in Connection with Preliminary Approval of Settlement; (attached as **Exhibit 3**). Plaintiffs also submit a proposed preliminary approval order (attached as **Exhibit 4**).

## FACTUAL BACKGROUND

**Overview of the Litigation**

Hilb Group is an insurance brokerage firm that offers insurance and various other products and services to its customers. In January 2023, Hilb Group became aware of a Security Incident carried out by a malicious third-party who accessed files on Hilb Group's computer network. After investigating, Hilb Group determined that the Security Incident may have compromised certain Personal Information belonging to Hilb Group customers and other individuals. The Personal Information included, but is not limited to, full names, addresses, Social Security numbers, financial account information, driver's licenses and state identification information, passport information, medical information, and health insurance information.

Hilb Group sent notice of the Security Incident in November 2023 to those individuals whose information may have been compromised in the Security Incident, offered temporary identity theft and credit monitoring services, and provided resources for additional information. Plaintiffs are all persons who received notice of the Security Incident from Defendant.

In November 2023, the civil actions of *Tiller v. Hilb Group Operating Company, LLC*, No. 3:23-cv-759; *Hafiez v. Hilb Group Operating Company, LLC*, No. 3:23-cv-760; *Greene v. Hilb Group Operating Company, LLC*, No. 3:23-cv-761; and *Crowley v. Hilb Group Operating Company*, No. 3:23-cv-778 (collectively, "Civil Actions"), were filed in the United States District Court for the Eastern District of Virginia, asserting claims individually and on behalf of a putative nationwide class regarding the Security Incident. On February 6, 2024, the Court consolidated the Civil Actions under a single civil action number, No. 3:23-cv-759.

On March 6, 2024, Plaintiffs filed their Consolidated Amended Class Action Complaint (the "Complaint"), alleging claims of negligence, breach of implied contract, breach of the implied

3

covenant of good faith and fair dealing, unjust enrichment, and declaratory judgment. ECF No. 18. Hilb Group then filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6). ECF Nos. 20 and 21. Plaintiffs filed their response on April 10, 2024 (ECF No. 27), and Defendant filed its reply on April 16, 2024 (ECF No. 28). The Parties exchanged initial disclosures and participated in a Scheduling Conference with the Court on April 24, 2024. Coates Decl. ¶ 6. On May 13, 2024, Hilb Group filed its answer to the Complaint. ECF No. 36. Plaintiffs commenced formal discovery, serving interrogatories and document requests, and served a Rule 30(b)6) deposition notice. Coates Decl. ¶ 6.

During this same time frame, the Parties began settlement discussions, and ultimately agreed to participate in a private mediation. *Id*. ¶¶ 7-8. In the lead up to the mediation, the Parties engaged in intensive informal discovery, designed to fully inform both Parties of the facts of this case. *Id*. ¶ 7. The Parties also both prepared fulsome mediation statements. *Id*. ¶ 8. On June 6, 2026, the parties participated in a full-day mediation facilitated by an experienced mediator Jill S. Sperber, Esq. of Judicate West. *Id*. Ms. Sperber is a highly sought-after mediator with vast experience mediating commercial class actions, including a substantial number of data privacy class actions. *Id*. After a full day of negotiations, the Parties were at an impasse. *Id*. In the days following the mediation, Ms. Sperber made a mediator's proposal that the Parties accepted, coming to an agreement in principle on the amount of the $1,600,000.00 Settlement Fund. *Id*. The Parties thereafter negotiated the granular terms of the Settlement, and finalized the Settlement Agreement and its exhibits on July 18, 2024.

While the negotiations were professional throughout, they were marked by significant factual and legal disputes impacting the value of the case. With Ms. Sperber's assistance and guidance, and her mediator's proposal, the Parties were able to reach a resolution. At all times the

4

negotiations were at arm's length, and free of collusion of any kind. Attorneys' fees were not discussed in any manner during the mediation, with the Parties only negotiating the total amount of the non-reversionary common Settlement Fund from which any award of attorneys' fees will be made. *Id*. ¶ 9.

## A.       The Terms of the Proposed Settlement

The following are the material terms of the settlement:

### The Settlement Class

The proposed Settlement Class is defined as: "All United States residents whose Personal Information was impacted during the Security Incident that is the subject of the Notice of Data Breach that Defendant published on or around November 2, 2023." S.A. ¶ 1.40. The Settlement Class consists of approximately 108,954 individuals. *Id.*

### The Settlement Fund

In two installments, Hilb Group will cause to be paid $1,600,000 into a Settlement Fund for class benefits, notice and administration costs, attorneys' fees, expenses, and service awards to the Class Representatives. S.A. ¶ 2.2. No proceeds will revert to Hilb Group. The specific benefits available to Settlement Class Members are detailed in the Settlement Agreement (Exhibit 1), and include:

Pro Rata Cash Payments. All Settlement Class Members may claim a pro rata cash payment estimated to be approximately $75.00 (the "Cash Payment") by submitting a Claim Form to the Settlement Administrator no later than 90 days after the Notice Date, or other deadline approved by the Court (the "Claims Deadline"). The Pro Rata Cash Payment amount per valid claim will be determined by the amount remaining in the Settlement Fund after deductions for valid out-of-pocket loss claims, Service Awards, Costs of Settlement Administration, and any Fee Award and

Costs. S.A. ¶ 3.1. The Settlement makes claiming this pro rata cash payment incredibly simple. The proposed Short Notice (Exhibit D to the Settlement Agreement) is a multi-panel postcard that will be mailed to all Settlement Class Members For whom there is a known mailing address. That postcard includes a "tear-off" panel claim form – with return postage included -- that can be used to claim the pro rata cash payment. Settlement Class Members merely need to "check the box" indicating an intent to claim the pro rata cash payment, sign the attestation on the form, and drop that claim form in the mail.

Documented Out-of-Pocket Loss Claims. In addition to the Pro Rata Cash Payment, Settlement Class Members may also claim compensation for unreimbursed losses upon submission of a valid and timely Claim and supporting documentation. Out-of-Pocket Losses must more likely than not result from the Security Incident, and are capped at a maximum amount of $5,000. S.A. ¶ 3.2(a). The Settlement Administrator shall have the sole discretion and authority to determine whether the prerequisites have been met to award payments for Out-of-Pocket Losses.

Settlement Class Members may claim both of these monetary benefits. However, Settlement Class Members seeking reimbursement for documented out-of-pocket losses must complete and submit either a written or online Claim Form to the Settlement Administrator, postmarked or electronically submitted on or before the Claims Deadline. The reason for this is because claimants must provide documentation supporting their Documented Out-of-Pocket loss claim. The Settlement Agreement provides that claims for Documented Out-of-Pocket Losses and Pro Rata Cash Payments will be increased or decreased pro rata to consume the remaining amount of the Settlement Fund after payment for notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court. S.A. ¶¶ 3.1, 3.2.

**Business Practice Commitments**

Hilb Group also agrees do provide written confirmation to Class Counsel of business practices changes taken after the Security Incident to protect the data security of the Class Representatives and the Settlement Class during the term of the claims administration process. Costs associated with these business practices changes shall be paid by Hilb Group separate and apart from the Settlement Amount. S.A. ¶ 3.9.

**Proposed Notice and Claims Program**

Proposed Class Counsel has retained, and requests that the Court appoint Kroll Settlement Administrator, LLC as Settlement Administrator to provide notice to Settlement Class Members and to process claims. The forms of notice (the Long and Short Forms, attached to the Settlement Agreement as Exhibits B and D) are clear and concise and directly apprise Settlement Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B). The Notice Plan satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure by giving direct summary postcard notice to the 108,954 Settlement Class Members via U.S. mail for whom there is a known mailing address and supplemented with digital media publication notice "to ensure the overall reach of the Notice program exceeds 70%." Kroll Decl. ¶ 11. Direct contact information is available for 81,539 of the 108,954 Settlement Class Members. Coates Decl. ¶ 17. Kroll will issue publication notice that, based on its experienced with administering notice in many other class action cases, will satisfy due process standards. Kroll Decl. ¶ 11. Moreover, the Long Form Notice will be posted on the Settlement Website, along with other important documents such as the Settlement Agreement, and a toll-free help line will be available to answer Settlement Class Members' questions. Kroll Decl. ¶ 12-13. In proposed Class Counsel's experience, the reach of

the Notice Plan meets that of other court-approved notice programs, and has been designed to meet due process requirements, including the "desire to actually inform" requirement. Coates Decl. ¶ 17. The Notice Plan is thus the best notice practicable under the circumstance of this case.

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the easy to use "tear-off" claim form for pro rata cash payments, and the ability to submit claims electronically on the Settlement Website or by mail.

### Attorneys' Fees and Expenses and Service Awards

Proposed Class Counsel may request a fee of up to one-third of the Settlement Fund, or $533,333.33, plus reimbursement of litigation expenses in a reasonable amount not to exceed $30,000. S.A. ¶ 9.1. Any award of attorneys' fees and expenses shall be paid exclusively from the Settlement Fund. S.A. ¶ 9.2. Class Counsel may also request Service Awards of up to $3,000 each for the five Settlement Class Representatives to be paid exclusively from the Settlement Fund. *Id.* ¶ 9.1. Proposed Class Counsel will move for fees, expenses and service awards at least 14 days before the Objection Deadline and Opt-Out Date. S.A. Settlement Timeline.

### Releases

The Settlement Class will release Hilb Group from claims that were or could have been asserted in this case. The releases are detailed in the Settlement Agreement. S.A. ¶¶ 1.32. 1.47, 8.1. The release here is limited to only those claims that arise from the Security Incident.

## <u>ARGUMENT</u>

### A.    Plaintiffs Have Article III Standing

The Court has an initial obligation to assure itself of the plaintiffs' "standing under Article III," which "extends to court approval of proposed class action settlements." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (per curiam). The Court does not have the power "to approve a proposed

class settlement if it lacks jurisdiction over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing." *Id.* "On the other hand, only one named plaintiff must have standing as to any particular claim in order for it to advance." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1261 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), *and cert. denied sub nom. Watkins v. Spector*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022). The Court need not determine whether absent Settlement Class Members have standing to have jurisdiction to approve the Settlement. *J.D. v. Azar*, 925 F.3d 1291, 1324 (D.C. Cir. 2019); *see also Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620 (4th Cir. 2018) (In a class action, "we analyze standing based on the allegations of personal injury made by the named plaintiffs.") (internal quotation marks omitted). Thus, to assure itself of its jurisdiction to approve the Settlement, the Court must find that at least one Settlement Class Representative has "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Hutton*, 892 F.3d at 619.

The Court can conclude that it has jurisdiction for purposes of this Settlement because the Settlement Class Representatives allegations in the Complaint establish standing to sue. For example, in February of 2024, Plaintiff Crowley received an email from an unknown address informing her that her Private Information was found on the dark web. Complaint ¶ 181. Plaintiff Crowley then spent money out of her own pocket to purchase a dark web report through G-Mail Security, which confirmed that her information first appeared on the dark web on January 5, 2023, *i.e.*, during the timeframe that threat actors had access to Defendant's email accounts. *See id.* Plaintiff Crowley has since been notified of several attempts to access accounts belonging to her and has received invoices for products in her name that she did not purchase. *Id.* ¶ 182.

Plaintiff Fasolo has already suffered theft as a result of the Data Breach, including $4,831 dollars stolen from her bank account between October 4, 2023 and October 5, 2023. *Id.* ¶ 195. A few days later, this account was closed without her consent and an additional $150 was withdrawn as an "account closing transaction." *Id.* And following the Data Breach, Plaintiff Tiller experienced unauthorized entries on her credit report that required her to take extra steps to open a bank account. *Id.* ¶ 207. Plaintiff Tiller, along with Plaintiffs Fasolo, Crowley, and Greene, have all experienced significant increases in spam emails, calls, or mail since the Data Breach as well. *Id.* ¶¶ 183, 196, 208, 217.

Fraud resulting from a data breach is an injury in fact when it is traceable to the breached defendant and is redressable by a federal court. *See Hutton*, 892 F.3d at 622-24. Plaintiffs also allege spending time addressing the misuse of their data, which satisfies the need to plead a concrete injury. *Hutton*, 892 F.3d at 622; *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."). Therefore, Plaintiffs have standing and the Court has jurisdiction over this action for purposes of approving this Settlement.[2]

## B. The Court Should Preliminarily Approve the Settlement and Direct Notice to the Settlement Class

### 1. Legal Standards

#### a. Preliminary Approval of Settlement

In the event of a settlement and proposal to certify a class for settlement purposes, the Court must determine whether to issue notice to the class. Fed. R. Civ. P. 23(e)(1). The parties are obligated to provide sufficient information to enable the Court to determine whether notice is

---

[2] Defendant agrees, for purposes of this Settlement only, that Plaintiffs have alleged Article III standing, but reserve all rights to contest standing, as articulated in the Motion to Dismiss. ECF No. 18.

appropriate, and the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id*. Moreover, Rule 23(e)(2) provides that a proposed settlement may be approved only after a hearing and on a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a proposed settlement is committed to the sound discretion of the court. *See Berry v. Schulman*, 807 F.3d 600, 608 (4th Cir. 2015). In determining whether a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court's Rule 23(e) obligations are addressed with a "two-level analysis." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). To determine whether a settlement is fair, the Court considers the four factors set forth by the Fourth Circuit in *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991): "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel . . . ." To determine whether a settlement is adequate, the courts also look to: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the

solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id*. There is a "strong presumption in favor of finding a settlement fair." *Lomascolo v. Parsons Brinckerhoff, Inc*., No. 1:08cv1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotation omitted).

In making the determination of preliminary approval, the Court does not answer the ultimate question of whether the proposed Settlement is fair, reasonable, and adequate; this analysis is reserved for the second stage of the settlement approval process. Instead, the first stage of the settlement approval process is focused on whether the settlement is sufficiently adequate to permit notice to be sent to the class. *See Hall v. Higher One Machines, Inc*., No. 5-15-CV-670-F, 2016 WL 5416582, at *5 (E.D.N.C. Sept. 26, 2016) ("If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to and opt out of the settlement.").

For purposes of preliminary approval, evaluation under these enumerated factors confirms that the proposed settlement is fair, adequate, and reasonable; accordingly, the Court should direct that notice of the Settlement issue to the Settlement Class.

### b. Conditional Class Certification

"When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement." *Gamas v. Scott Farms, Inc.*, No. 5:13-CV-447-FL, 2014 WL 12546373, at *2 (E.D.N.C. Dec. 24, 2014). A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but must analyze whether the other requirements for certification have been satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To approve a class settlement, the Court must still consider the requirements for class certification under Rule 23. *In re NeuStar, Inc. Sec. Litig.*,

No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *2 (E.D. Va. Sept. 23, 2015). The Settlement Class must also satisfy one of the categories of Rule 23(b). *Id*. However, the Court may disregard the manageability concerns of Rule 23(b)(3) because the Court may properly consider that there will be no trial. *See Amchem*, 521 U.S. at 620.

### c.   Notice Form Approval

As part of the preliminary approval process, the district court must also approve the notice of the settlement that the Parties propose be sent to Class Members. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must comport with due process and provide the "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id.*; *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Rule 23 leaves the form of the notice to the Court's discretion. *See Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003) ("a court may exercise its discretion to provide the best notice practicable under the circumstances."); *see also* Fed. R. Civ. P. 23(c)(2)(B).

### 2.   The Rule 23 and *Jiffy Lube* Factors Confirm Preliminary Approval is Warranted.

### a.   The Class Was Adequately Represented.

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plainitff's attorneys are 'qualified, experienced, and generally able to conduct the litigation.'" *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 567 (E.D. Va. 2016). Here, for purposes of settlement the Settlement Class Representatives have the same interests as other class members as they are asserting the same claims and share the same injuries. Further, Proposed Class Counsel's experience and qualifications warrant their appointment as Class Counsel in this litigation, and the record shows proposed Class Counsel worked diligently to litigate and ultimately bring this case to resolution. Coates Decl. ¶¶ 3-4; *see*

*also In re Lumber Liquidators*, 952 F.3d at 485 (finding counsel's experience in complex civil litigation supported fairness of settlement).

### b. The Proposed Settlement Was Negotiated at Arm's Length.

The Court may safely conclude this settlement was negotiated at arm's length, without collusion, based on the terms of the settlement itself; the length and difficulty of the negotiations; and the involvement of an experienced mediator, Jill S. Sperber, Esq. *See In re NeuStar*, 2015 WL 5674798, at *10 (adversarial encounters support a finding of arm's length negotiations); *see also* Coates Decl. ¶¶ 8-9. This factor supports a finding that the Court will likely be able to approve the Settlement.

### c. The Relief is Fair, Reasonable, and Adequate.

The relief offered to Class Members in the Proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(c). The metric by which data breach settlements are increasingly judged for the adequacy of the pecuniary benefit is by calculating the per-person settlement amount by dividing the Settlement Fund by the total number of class members. This Settlement – with a per person recovery of roughly $14.68 per person ($1.6 million divided by 108,954 class members), compares favorably to dozens of other court-approved data breach settlements with similar facts, including at least one that was preliminarily approved and another that was finally approved by other judges of this Court. *See In re R&B Corp. of Virginia d/b/a Credit Control Corp., Data Security Breach Litig.*, No. 4:23-cv-00066-JKW-RJK (E.D. Va.) (granting preliminary approval to a $1,613,300.45 non-reversionary common fund for 731,744 class members, equaling $2.20 per person) (ECF No. 57, July 12, 2024); *see also May v. Five Guys Enterprises*, No. 1:23-cv-00029 (E.D. Va.) (approving $700,000 non-reversionary common fund for 37,922 class members, equaling $18.45 per person) (final approval granted July 12, 2024, ECF

48). The amount offered in settlement here is completely consistent with the scale of this litigation, particularly when the per-person recovery amount is typically smaller for larger classes, and where this proposed Class is more than 2.5 times larger than the class in *Five Guys*. Coates Decl. ¶ 22.

Proposed Class Counsel, with his considerable experience in data breach class actions, opines that the relief is fair, reasonable, and adequate. Coates Decl., ¶ 25. Proposed Class Counsel is joined in this assessment by the other Plaintiffs' Counsel, who bring decades of experience with data privacy litigation to bear on Plaintiffs' behalf. The Court may rely upon such experienced counsel's judgment. *See, e.g.*, *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel."). That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

### i.    The Costs, Risks and Delay of Trial and Appeal.

Plaintiffs face significant risks and costs should they continue to litigate the case due to the potential expense and length of continued proceedings necessary to prosecute the litigation against Hilb Group through motion practice, trial, and potential appeals. The Court need look no further than the pending Motion to Dismiss (ECF 18) to see the litigation risks here. Even at the pleadings stage, this is a hotly contested case with no assurance of success. Further, if Plaintiffs prevailed on their intended motion for class certification and successfully defeated Defendant's anticipated motion for summary judgment thus proceeding to trial, Plaintiffs would have faced significant risk, cost, and delay. Plaintiffs face the uncertain outcome and risk of further litigation, as well as the difficulties and potential delays inherent in such litigation.

In contrast to the risks, costs, and delay posed by continued litigation and potential trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed

Settlement Class. It ensures that Settlement Class Members who submit valid claims for Documented Out-of-Pocket Losses or Pro Rata Cash Payments will receive guaranteed compensation now. The substantial costs, risks, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.

### ii. The Method of Distributing Relief is Effective.

The distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which will be made available to all Settlement Class Members, and identifies the benefits to which they are entitled through submission of a valid claim.

As an initial matter, the proposed Notice Plan includes dissemination of direct, individual summary notice by postcard. The total potential Settlement Class size is approximately 108,954 people and contact information (to provide individual notice) is available for roughly 75% of the Settlement Class with publication notice being used to potentially apprise the remaining 25% of the Settlement Class of the Settlement. It is expected that the Notice program will reach at least more than 70% of the Settlement Class. Kroll Decl., ¶ 11.

Therefore, Settlement Class Members will receive effective and efficient notice of the two forms of monetary settlement benefits, which will be distributed as follows. *First*, Settlement Class Members are entitled to make claims online via the Settlement Website or by mail for reimbursement of Documented Out-of-Pocket Losses up to $5,000, Settlement Class Members need only submit a Claim Form on the Settlement Website or by mail accompanied by reasonable documentation showing the claimed expenses to establish Out-of-Pocket Losses. S.A. ¶ 3.2. If a claim is rejected for any reason, there is also a consumer-friendly appeals process whereby claimants will have the opportunity to cure any deficiencies in their submission. *Id.* ¶ 4 1.

*Second*, Settlement Class Members may utilize the incredibly simple "tear-off" claim form described above to claim the Pro Rata Cash Payments. Reply postage is included with this "tear-off" claim form.

Because Settlement Class Members may make claims through an incredibly simple tear-off claim form, an easy-to-use online form or by mail, the method of distributing the relief is both efficient and effective, and the proposed Settlement is adequate under this factor.

### iii.  The Terms Relating to Attorneys' Fees are Reasonable.

Proposed Class Counsel will request a fee of up to one-third of the $1,600,000 non-reversionary common fund, which is the value conferred by the Settlement on the Settlement Class, and for reimbursement of reasonable expenses up to $30,000 incurred in prosecuting and settling this case. S.A. ¶ 9.1. Where, as here, a class settlement creates a non-reversionary common fund, fees are awarded on a "percentage of the fund" approach. *See, e.g.*, *Transurban*, 318 F.R.D. at 575. Within the Fourth Circuit, the percentage-of-the-fund method is the preferred approach to determine attorneys' fees in common fund cases. *Rosales v. Rock Spring Contracting, LLC*, No. 2024 WL 1417955, at *8 (E.D. Va. Apr. 2, 2024) ("a fee award determined by percentage is preferred over the lodestar method in common fund cases such as this.") (Internal citations and quotations omitted); *Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *2 (M.D.N.C. Sept. 29, 2016) (Internal citation omitted); *Phillips v. Triad Guaranty Inc.*, No. 1:09CV71, 2016 WL 2636289, at *2 (M.D.N.C. May 9, 2016) (noting that district courts within the Fourth Circuit "overwhelmingly" prefer the percentage-of-the-fund method in common fund settlement); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases." (collecting cases)).

17

Under the Settlement Agreement, Plaintiffs' request for Attorneys' Fees and Expenses will be filed with the Court at least 14 days before the Objection and Opt-Out deadlines. In the settlement negotiations, attorneys' fees and expenses were not discussed in any manner, with the Parties only negotiating the total amount of the Settlement Fund. Coates Decl. ¶ 9. The ultimate fee award will be based on an application to the Court based on Fourth Circuit law with the opportunity for comment from Settlement Class Members.

Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award. S.A. ¶ 9.3. Accordingly, at this stage, the Court can and should conclude that it is likely to approve the Settlement for purposes of sending notice to the Settlement Class, even if it has not yet concluded whether and in what amount it would award attorneys' fees and expenses. The proposed Settlement is adequate under this factor.

### iv.  Any Agreement Required to be Identified under Rule 23(e)(3).

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal," and that the Court must then consider any such agreements when determining whether the relief provided in the settlement is adequate. *See* Fed. R. Civ. P. 23(e)(2)-(3). Here, there are no such agreements.

### v.  The Proposed Settlement Treats Class Members Equitably.

Finally, the proposal treats all Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to file a claim for Documented Out-of-Pocket Losses and Pro Rata Cash Payments. This means that monetary compensation will be apportioned in accordance with each claimant's alleged injury. In the event claims exceed the available settlement funds, all claims will be reduced *pro rata*, with no Settlement Class Members obtaining any greater relative benefit over another. This factor

likewise supports a finding that the Court will be able to approve the proposed Settlement, and that class notice is appropriate.

### 3. The Proposed Settlement Class Meets the Requirements for Conditional Certification

To issue notice, the Court should decide it will "likely be able to . . . certify the class for purposes of judgment." Fed. R. Civ. P. 23(e)(1)(B); *Amchem*, 521 U.S. at 620. Such a decision should not be difficult. Settlement classes are routinely certified in similar consumer data breach cases. *See, e.g., In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19md2915 (AJT/JFA)*,* Doc. 118 (E.D. Va. Feb. 7, 2022); *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019). There is nothing different about this case, which is demonstrated by examining the requirements of Rule 23(a) and (b).

### a. The Rule 23(a) Requirements Are Satisfied.

*Numerosity:* The proposed class consists of approximately 108,954 U.S. residents, indisputably rendering individual joinder impracticable. *See Jeffreys v. Commc'ns Workers of Am. AFL–CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003) (noting that "where the class numbers twenty-five or more, joinder is generally presumed to be impracticable").

*Commonality:* "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury, such that all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-350 (2011) (internal citations omitted). This requires that the determination of the common question "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350 "Even a single common question will do." *Id.* at 359.

19

Rule 23(a)(2)'s commonality requirement is met where, as here, the defendant engaged in a common course of conduct. *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 223 (E.D. Va. 2003). All Settlement Class Members are alleged to have suffered the same injury—theft of their personal data in the Security Incident—and are asserting the same legal claims. Accordingly, for purposes of this Settlement common questions of law and fact abound. *See, e.g.*, *Abubaker*, 2021 WL 6750844, at *3.

**Typicality:** Typicality under Rule 23(a)(3) requires an inquiry into the "representative parties' ability to represent a class . . . ." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998). In other words, the "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67. This requirement is readily satisfied in data breach class action cases. For purposes of this Settlement, the Settlement Class Representatives' claims are typical of other class members because they arise from the same Security Incident and involve the same overarching legal theories, including the theories that Hilb Group breached implied contracts with Settlement Class Representatives and Settlement Class Members and failed in its common-law duty to protect their personal information. *See, e.g.*, *Abubaker*, 2021 WL 6750844, at *3.

**Ascertainability:** Rule 23 also contains the implied requirement that the court be able to "readily identify the class members in reference to objective criteria." *EQT Production Co. v. Adair*, 764 F.3d 247, 358 (4th Cir. 2014). A proposed class representative "need not be able to identify every class member at the time of certification." *Id.* "[E]xtensive and individualized fact-

finding" or "mini-trials" render certification inappropriate. *Id*. (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Here, Defendant identified each member of the Class and sent them notice of the Security Incident. This Settlement Class is easily ascertained for this Settlement.

*Adequacy of Representation:* "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. Settlement Class Representatives do not have any interests antagonistic to other class members and have retained lawyers who are abundantly qualified and experienced, satisfying the adequacy requirement. Coates Decl. ¶¶ 23, 25.

### b.  The Rule 23(b)(3) Requirements Are Satisfied.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that class treatment is "superior to other available methods for fairly and efficiently adjudicating the controversy." One part of the superiority analysis—manageability—is irrelevant for purposes of certifying a settlement class. *Transurban*, 318 F.R.D. at 569.

*Predominance:* Rule 23(b)(3)'s predominance requirement tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance inquiry measures the relative weight of the common questions as against individual ones. *Amchem*, 521 U.S. at 624. "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need to resolve individualized issues." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 305 (4th Cir. 2013)). Common liability issues often predominate where class members "all assert injury from the same action." *Gray v. Hearst Commc'ns, Inc.*, 444

F. App'x 698, 701–02 (4th Cir. 2011); *see also Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (finding common issues predominated where class members were exposed to "the identical risk of identity theft in the identical manner by the repeated identical conduct of the same defendant.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of alleged conduct by Hilb Group. *See, e.g.*, *Abubaker*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *13; *Anthem*, 327 F.R.D. at 311-16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312.

*Superiority:* "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." 7A Charles Wright, Arthur Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1779 (3d ed. 2005). Litigating the same claims of 108,954 persons through individual litigation would obviously be inefficient. The superiority requirement thus is satisfied. *See Equifax*, 2020 WL 256132, at *14; *Anthem*, 327 F.R.D. at 315-16.

## C.      The Court Should Approve the Notice Plan, Notices, and Claim Form, and Appoint the Settlement Administrator.

To satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly requires that notice be reasonably disseminated to those who would be bound by the court's judgment. Fed. R. Civ. P. 23(e)(1). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Plaintiffs request that the Court appoint Kroll as the Settlement Administrator and approve the Notice Plan. The Notice Plan is uncomplicated. Hilb Group will generate and provide to Kroll a Class List within 14 days of the preliminary approval order directing class notice. S.A. Settlement Timeline. Using the information in that list, Kroll will provide individual direct notice by mailed postcard and supplement that notice with publication notice. Plaintiffs and Proposed Class Counsel anticipate that such notice will reach a minimum of approximately 70% of Settlement Class Members, meeting the requirements of Rule 23 and due process. *See, e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (recognizing the effectiveness of notice that reaches between 70-95% of the class). When implemented, the Notice Plan will provide the best notice practicable under the circumstances. Kroll Decl. ¶ 11.

The Court should also approve the proposed forms of notice attached to the Settlement Agreement (Exhibit 1) as Exhibits B and D ("Notices"), which satisfy all of the criteria of Rule 23. The Notices are clear, straightforward, and provide persons in the proposed Settlement Class with enough information to evaluate whether to participate in the settlement. The Notices also advise the proposed Settlement Class how to exclude themselves from the settlement, and how to object to the settlement, including the requested attorney fees and costs. Thus, the Notices satisfy the requirements of Rule 23. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (explaining a settlement notice must provide settlement class members with an opportunity to present their objections to the settlement).

23

Finally, the Court should approve the Claim Form attached to the Settlement Agreement (Exhibit 1) as Exhibit A. The Claim Form is written in plain language and can be submitted online or printed and mailed to the Settlement Administrator.

**D.     The Court Should Appoint Settlement Class Counsel**

When certifying a class, Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court considers counsel's work in identifying or investigating potential claims; experience in handling class actions or other complex litigation and the types of claims asserted in the case; knowledge of the applicable law; and resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

The Court should approve proposed Class Counsel Terence R. Coates as Class Counsel. Mr. Coates was previously appointed as Interim Lead Counsel for this proceeding. ECF 15. Throughout this case, Proposed Class Counsel has demonstrated the hard work, legal scholarship, experience, and resources they bring to bear, ultimately resulting in the settlement now before the Court. The Court should thus appoint Mr. Coates as Class Counsel under Rule 23(g).

**E.     Timeline of Settlement Events**

For the Court's convenience, Plaintiffs propose the following dates and deadlines leading to a final approval hearing.

| ACTION | DATE |
|---|---|
| Defendants Provide Class Member List | Within 14 days following entry of Order Granting Preliminary Approval |
| Notice Date | 30 days following entry of Order Granting Preliminary Approval |
| Motion for Attorneys' Fees, Expenses, and Service Awards to the Plaintiffs | 14 days prior to the Objection Deadline and Opt-Out Date |
| Exclusion / Opt-Out Deadline | 60 days after Notice Date |

| Objection Deadline | 60 days after Notice Date |
|---|---|
| Deadline to Submit Claims | 90 days after Notice Date |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing | (To be scheduled approximately 150 days after entry of Preliminary Approval Order) |

## CONCLUSION

For the reasons set forth set forth above, Plaintiffs request the Court enter the order proposed by the Parties granting preliminary approval, directing the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan, and scheduling a Final Approval Hearing.

Dated: July 18, 2024                                    Respectfully submitted,

*/s/ Lee A. Floyd*
Lee A. Floyd, VSB #88459
Sarah G. Sauble VSB #94757
**BREIT BINIAZAN, PC**
2100 East Cary Street, Suite 310
Richmond, Virginia 23223
Telephone: (804) 351-9040
Facsimile: (804) 351-9170
Lee@bbtrial.com
Sarah@bbtrial.com

Terence R. Coates (pro hac vice)
Justin C. Walker (pro hac vice)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com
jwalker@msdlegal.com

Courney L. Weiner (No. 96733)
**LAW OFFICE OF COURTNEY WEINER PLLC**
1629 K Street, NW, Suite 300

Washington, DC 20006
T: (202) 827-9980
cw@courtneyweinerlaw.com

David K. Lietz (pro hac vice)
Gary Klinger*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, LLC**
5335 Wisconsin Avenue NW
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com
gklinger@milberg.com

Kevin Laukaitis*
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Telephone: (215) 789-4462
klaukaitis@laukaitislaw.com

William B. Federman (pro hac vice)
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
-and-
212 W. Spring Valley Road
Richardson, TX 75081
Telephone: (405) 235-1560
wbf@federmanlaw.com

*Pro Hac Vice forthcoming*

*Counsel for the Plaintiffs and the Class*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 18, 2024, the foregoing was filed electronically with the Clerk of the Court using the CM/ECF System and was thereby served on all counsel of record.

_/s/ Lee A. Floyd_
Lee A. Floyd