**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

LEIGH TILLER, MULHAM HAFIEZ, BENNY GREENE, LAURA FASOLO, and GABRIELLE CROWLEY, *individually and on behalf of all others similarly situated*,

        Plaintiffs,

        v.

THE HILB GROUP OPERATING COMPANY, LLC,

        Defendant.

Case No. 3:23-cv-00759 (JAG)

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Leigh Tiller, Mulham Hafiez, Benny Greene, Laura Fasolo, and Gabrielle Crowley (collectively, "Plaintiffs"), by and through the undersigned Settlement Class Counsel,[1] on behalf of themselves and the Settlement Class, submit this Memorandum of Law in support of their Unopposed Motion for Final Approval of Class Action Settlement.

## I.    INTRODUCTION

Plaintiffs and their Counsel secured an outstanding settlement on behalf of the Settlement Class, and now bring that Settlement before the Court for final approval. If approved, the Settlement will successfully resolve the claims of over 108,000 individuals nationwide who were

---

[1] The Court appointed Terence R. Coates of Markovits, Stock & DeMarco, LLC as Class Counsel. ECF No. 42 ¶ 5. Pursuant to the Settlement Agreement ("S.A.") Plaintiffs' Counsel includes Lee A. Floyd of Breit Biniazan, PC; Justin C. Walker of Markovits, Stock & DeMarco, LLC; David K. Lietz and Gary M. Klinger of Milberg, Coleman, Bryson, Phillips, Grossman, LLC; Kevin Laukaitis of Laukaitis Law, LLC; William B. Federman of Federman & Sherwood; and Courtney L. Weiner of Law office of Courtney Weiner, PLLC. ECF No. 39-1 ¶ 1.29.

notified of a security incident that Defendant The Hilb Group Operating Company, LLC ("Defendant" or "Hilb Group") announced in November 2023 that compromised their Personal Information, including full names, addresses, Social Security numbers, financial account information, driver's licenses and state identification information, passport information, medical information, and health insurance information (the "Security Incident").[2]

As discussed below, the Settlement provides for a non-reversionary common fund of $1,600,000 from which Settlement Class Members will be able to claim monetary benefits, including: (1) Pro Rata Cash Payments estimated to be $75; and (2) documented Out-of-Pocket Losses as a result of the Security Incident up to $5,000 (subject to pro rata adjustment). S.A. ¶¶ 3.1, 3.2. Further, Defendant, through the Settlement Fund, will pay all costs of notice and administration, presently estimated to be at least $111,700.33. *See* Declaration of Andrea R. Dubinsky of Kroll Settlement Administration, LLC in Connection with Final Approval of Settlement ("Kroll Decl."), attached hereto as **Exhibit 1**, ¶ 19. In addition to the potential monetary benefits, Defendant has provided written confirmation to Class Counsel of business practice changes taken after the Security Incident to protect the data security of Class Representatives and the Settlement Class during the term of the claims administration process. Costs associated with Defendant's business practice changes shall be paid by Defendant separate and apart from the Settlement Fund. S.A. ¶ 3.9. The Settlement affords meaningful relief to the Settlement Class and resolves their injuries without the further delay, risk, and expense of continued litigation.

Settlement Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after an extensive investigation and prolonged arm's length negotiations,

---

[2] Unless otherwise defined, all capitalized terms have the meaning set forth in the Settlement Agreement. ECF No. 39-1.

including a June 6, 2024 mediation session with Jill R. Sperber, Esq. Although the Parties did not come to an agreement during the session, Ms. Sperber made a mediator's proposal shortly thereafter which resulted in an agreement-in-principle among the Parties on June 17, 2024. From there, the Parties collaborated to arrive at the Settlement presently before the Court for final approval. On August 15, 2024, this Court preliminarily approved the proposed Settlement.

Following preliminary approval, the Settlement Administrator—with the help of the Parties—successfully disseminated Notice to the Settlement Class. Individual Notice was provided directly to the majority of Settlement Class Members via U.S. Mail. Class Notice was sent to the total Settlement Class, and was successfully received by roughly 98.0% of the Settlement Class for whom Defendant had mailing addresses, meeting and exceeding the due process standard. *See* Kroll Decl. ¶ 12. The Notice provided Settlement Class Members with information regarding how to reach the Settlement Website, make a Claim, and how to opt-out or object to the Settlement. Only 3 Settlement Class members have sought to be excluded from the Settlement, and none have objected. *See* Declaration of Terence R. Coates in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Coates Decl."), attached hereto as **<u>Exhibit 2</u>**, ¶ 5. The Notice program was efficient and effective, and since the Court granted preliminary approval, nothing has changed to alter the initial finding that the Settlement is fair, reasonable, and adequate. The Claims Period ran through December 13, 2024.

For the reasons detailed below, the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and adequate result for the Settlement Class. Plaintiffs respectfully request that the Court finally approve the Settlement, certify the Settlement Class, grant Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses, and Class Representative Service Awards, and enter a final judgment dismissing the case.

## II.    INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Motion for Preliminary Approval of Class Action Settlement filed on July 18, 2024, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith. ECF No. 39. Plaintiffs also incorporate by reference Plaintiffs' Motion and Memorandum of Law in Support for Attorneys' Fees, Expenses, and Class Representative Service Awards, filed on October 30, 2024. ECF Nos. 43-44.

## III.    SUMMARY OF SETTLEMENT

### A.  The Settlement Class

The proposed Settlement would establish a Settlement Class for the purpose of settlement only, defined as:

> All United States residents whose Personal Information was accessed during the Security Incident that is the subject of the Notice of Data Breach that Defendant published on or around November 2, 2023.

S.A. ¶ 1.40.

### B.  Settlement Benefits

The Settlement negotiated on behalf of the Settlement Class provides for monetary relief in the form of: (1) Pro Rata Cash Payments estimated at $75; and (2) reimbursement for Out-of-Pocket Losses up to $5,000 per Settlement Class Member. S.A. ¶¶ 3.1, 3.2. In addition to the foregoing settlement benefits, Defendant agreed to provide Class Counsel with written confirmation of its business practice changes taken after the Security Incident to protect the data security of the Class Representatives and Settlement Class during the terms of the claims administration process. Costs associated with these changes shall be paid by Defendant separate

and apart from the Settlement Amount. S.A. ¶ 3.9. This also represents a significant benefit to the Settlement Class.

### C.  Fees, Costs, And Service Awards

As compensation for the substantial benefit conferred upon the Settlement Class Members, Plaintiffs previously moved for an award of attorneys' fees in the amount of $533,333.33, expenses in the amount of $16,793.84, and Class Representative Service Awards in the amount of $3,000 for each Class Representative, totaling $15,000. *See* ECF No. 44.

### D.  Notice And Claims

Notice was carried out by Kroll Settlement Administrator, LLC ("Kroll" or the "Settlement Administrator"), pursuant to the Settlement Agreement and Preliminary Approval Order. Before mailing, Settlement Class Members' mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service. *See* Kroll Decl., ¶ 8. Thereafter, Postcard Notice was sent to the 81,314 Class Members that passed address validation. *Id*. ¶ 9. Of the 81,314 Short Form Notices sent by mail, 6,991 were returned to Kroll. *Id*. ¶ 10-11. 463 of the returned pieces included forwarding information and were promptly remailed to the forwarding addresses provided by the USPS. *Id*. ¶ 10. Of the remaining undeliverable pieces, 5,356 were resent after utilizing address tracing. *Id*. In sum, 81,314 Short Form Notices, or 98.0%, of the pieces dispersed were successfully mailed. *Id*. ¶ 12.

In addition to the direct mail notice, throughout the notice and claims process, Kroll maintained a dedicated Post Office Box for the Settlement Program. *Id*. ¶ 6. This P.O. Box served as a location for the USPS to return undeliverable program mail to Kroll and for Settlement Class Members to submit paper claims, Opt-Outs, and other settlement-related correspondence. *Id*. The P.O. Box address appears prominently in all Notices and in multiple locations on the Settlement

Website. Kroll has monitored the P.O. Box throughout the claims period and employs a dedicated mail intake team to process each item received. *Id*.

Moreover, Kroll published and continues to maintain the Settlement Website, www.hgdatasettlement.com. *Id*. ¶ 5. Visitors to the Settlement Website can download the Long Form Notice, the Short Form Notice, the Claim form, as well as Court Documents, such as the Class Action Complaint, the Settlement Agreement, Motions filed by Class Counsel, and Orders of the Court. *Id*. Visitors were also able to submit claims electronically, contact the Settlement Administrator directly, and find answers to frequently asked questions ("FAQs"), important dates and deadlines, and contact information for the Settlement Administrator. *Id*.

Kroll also established a toll-free telephone number, (833) 739-3318 (the "Toll-Free Number"), which is available twenty-four hours per day, seven days a week. *Id*. ¶ 7. The Toll-Free Number appeared in all Notices, as well as in multiple locations on the Settlement Website. The Toll-Free Number will remain active through the close of this Settlement Program. The telephone number has received a total of 110 calls since it was established. *Id*.

The timing of the Claims Process was structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their Claim, and decide whether they would like to opt-out or object. Settlement Class Members were given 60 days from the date notice was mailed to file objections or to opt-out of the Settlement. As of January 10, 2025, only 3 Settlement Class Members have sought to be excluded from the Settlement, and no Class Members have objected. *Id*. ¶ 18; Coates Decl. ¶ 5. The Settlement Class has responded favorably to the Settlement, with the claims rate being roughly 7.5% (6,079 claims) of the Class Members who were issued direct Notice of the Settlement. Coates

Decl. ¶ 5. This is a great result for data privacy class actions where claims rates generally fall between 1-3%. *Id*. ¶¶ 5-7; Kroll Decl. ¶ 14; ECF No. 44 at p. 12.

The Opt-Out and Objection deadline closed on November 13, 2024, and the Claims Period closed on December 13, 2024, with 6,079 claims filed through January 10, 2025. Kroll Decl. ¶ 14. Kroll continued to accept and review claims submitted by Settlement Class Members through the claims filing deadline.

## IV.    LEGAL ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate

"Per Federal Rule of Civil Procedure 23(e), a class action may only be settled with the court's approval." *Galloway v. Williams*, No. 3:19-CV-470, 2020 WL 7482191, at *4 (E.D. Va. Dec. 18, 2020) (citing Fed. R. Civ. P. 23(e)). In contemplating whether to grant final approval, the Court must consider various factors; namely, whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i)    the costs, risks, and delay of trial and appeal;
>>
>> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)  the terms of any proposed award of attorney's fees, including timing of payment;
>>
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.* (quoting Fed. R. Civ. P. 23(e)(2)). In granting preliminary approval, this Court made an initial determination that the Settlement is fair, reasonable, and adequate under Rule 23(e). The Court should now finally determine that the Settlement is fair, reasonable, and adequate and should

be approved.

Further, the Court's Rule 23(e) obligations are addressed with a "two-level analysis." *In re The Mills Corp. Sec. Litig.,* 265 F.R.D. 246, 254 (E.D. Va. 2009). The Fourth Circuit established four factors upon which fairness turns*:* "(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel." *In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 159 (4th Cir. 1991). As to adequacy, the Fourth Circuit considers "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

These factors were satisfied when the Court granted preliminary approval, and remain unchanged. Thus, the Court should find that the Settlement is fair, reasonable, and adequate for the purpose of granting final approval.

### 1.  The Class Was Adequately Represented

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc.,* 318 F.R.D. 560, 567 (E.D. Va. 2016) (citation omitted). The interests of the Class Representatives are not antagonistic to Settlement Class Members. The interests of the Class Representatives are the same as all Settlement Class Members, as they are asserting the same

claims and injuries arising from the Security Incident as those faced by Settlement Class Members at large.

Further, Class Counsel's experience and qualifications have been recognized by this Court in the decision to appoint Terence R. Coates as Class Counsel. *See* ECF No. 42 ¶ 1. Class Counsel and Plaintiffs' Counsel have zealously litigated Plaintiffs' and Class Members' claims, and worked tirelessly to resolve this case in Plaintiffs' and Class Members' favor. *See* ECF No. 44-1, Declaration of Terence R. Coates in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Class Representative Service Awards; *see also In re: Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### 2. The Proposed Settlement Was Negotiated at Arm's Length

The Parties negotiated the Settlement at arm's length, absent collusion, based on the terms of the Settlement itself; the length and difficulty of the negotiations; and the involvement of an experienced mediator, Jill S. Sperber, Esq. Coates Decl. ¶ 2. *See In re NeuStar, Inc. Sec. Litig.*, No. 1:l 4-CV-885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arm's length negotiations); *see also* ECF No. 44-1 ¶ 8-9 (Coates Fee Decl.).

### 3. The Relief Is Fair, Reasonable, And Adequate

The proposed Settlement provides Class Members with favorable relief given their injuries arising from the Security Incident and is commensurate with the factors outlined in Rule 23(e)(2)(C). Settlement Class Members are entitled to benefits that are tailored to the circumstances underlying this litigation, including recovery in the form of a Pro Rata Cash

Payment (and now anticipated to be $142); and reimbursement for Out-of-Pocket Losses up to $5,000 per Class Member. S.A. ¶¶ 3.1, 3.2. Moreover, Defendant has implemented and maintained certain business practices changes that also provide a crucial benefit to Settlement Class Members whose sensitive Personal Information remains in Defendant's possession.

Class Counsel, who have meaningful experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. Coates Decl. ¶ 3. The Court may rely upon such experienced counsel's judgment. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.") (quotation omitted).

### a.  The Costs, Risk, And Delay of Trial and Appeal.

When considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is exceptionally reasonable. As outlined in the preliminary approval motion, Plaintiffs face significant risks and costs if litigation continues. Certainly, Defendant's pending Motion to Dismiss (ECF No. 18) represents a material risk to the survival of Plaintiffs' claims. Moreover, while Plaintiffs are confident in their claims, there exist serious risks for Plaintiffs surviving the class certification stage as data breach class actions are notoriously risky. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013); *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting that data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare."); *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] 'are

particularly risky, expensive, and complex.'") (citation omitted). Further, Plaintiffs must also survive other case-dispositive motions, such as motions for summary judgment, along with *Daubert* motions on damages methodologies. Even if Plaintiffs obtain class certification and proceed to trial, there still remain the complexities and risk involved with maintaining class certification through trial.

While continued litigation posed potential threats to Plaintiffs' ability to recover for the Settlement Class, the proposed Settlement provides substantial and immediate relief to Settlement Class Members. The Settlement ensures Pro Rata payments to Settlement Class Members, as well as the opportunity for Settlement Class Members with valid Out-of-Pocket Losses to be reimbursed up to $5,000 each. These are tangible benefits that may not have been available to Settlement Class Members were this case taken to trial. Accordingly, the substantial costs, risk, and delay of proceeding to a trial and engaging in a potential appeal demonstrate that the proposed Settlement is adequate, and a successful resolution for Plaintiffs and Class Members.

### b. The Method of Distributing Relief Is Effective.

The Settlement outlines an efficient and effective method of distributing relief to Settlement Class Members. The Notice disseminated by Kroll plainly and clearly articulated the available relief to Settlement Class Members. Specifically, the Notice outlined the benefits afforded to Settlement Class Members, and their avenues for securing different forms of relief.

Kroll provided efficient and effective notice to the Settlement Class. As part of the Notice program, Kroll disseminated individual notice through the Short Form postcard notice, which was sent by U.S. Mail. This direct mail notice reached approximately 79,653 Class Members. Kroll Decl. ¶ 127. Kroll also issued publication notice as a supplementary form of informing Class Members. Additionally, Kroll established and continues to maintain the

11

Settlement Website, a toll-free telephone number, and a P.O. Box for the purposes of communicating with Settlement Class Members. In sum, Settlement Class Members received effective and efficient notice of the relief offered.

Because Settlement Class Members were able to make claims through a simple online form or by mail, the method of distributing the relief was both efficient and effective, and the proposed Settlement is adequate under this factor.

### c. The Terms Relating to Attorneys' Fees Are Reasonable.

Class Counsel requested $533,333.33 (1/3 of the Settlement Fund) in attorneys' fees and $16,793.84 in reimbursement for costs and expenses. Class Counsel's request is on par with awards routinely granted by the Fourth Circuit.[3] ECF No. 44-1 ¶ 17. As anticipated, additional time has been spent by Plaintiffs' Counsel since the Motion for Attorneys' Fees was filed, and Plaintiffs' Counsel's total lodestar is now $389,286.95, representing a lodestar multiplier of 1.37. Coates Decl. ¶¶ 10-11. The fees and costs are factually well supported by the declarations of Class Counsel and Class Representatives. *See* ECF No. 44, Motion for Attorney's Fees, Expenses, and Class Representative Service Awards; Coates Decl. ¶¶ 10-11. Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award or the requested Service Awards. This factor supports approval of the proposed Settlement.

---

[3] *See, e.g., McAdams v. Robinson*, 26 F. 4th 149, 162 (4th Cir. 2022) (approving attorneys' fees of $1,300,000 or 43% of the $3,000,000 settlement); *Chrismon v. Pizza*, No. 5:19-CV-155-BO, 2020 WL 3790866, at *5 (E.D.N.C. July 7, 2020) (collecting cases and noting that Fourth Circuit courts have frequently found fee requests of 1/3 of the settlement fund reasonable).

### d.  Any Agreement Required to Be Identified Under Rule 23(e)(3)

There exist no additional agreements between the Parties, aside from the proposed Settlement, or with others made in connection with the Settlement. Thus, this factor weighs in favor of final approval of the Settlement.

### 4.    The Proposed Settlement Treats Class Members Equitably

Settlement Class Members are treated equitably relative to one another because all Settlement Class Members have similar claims arising from the Security Incident and all Settlement Class Members are subject to the same treatment under the terms of the proposed Settlement. Fed. R. Civ. P. 23(e)(2)(D). Specifically, all Settlement Class Members have an equal opportunity to claim the benefits provided by the Settlement, including Pro Rata cash payments and compensation for documented Out-of-Pocket Losses. Moreover, all Settlement Class Members, even those who do not submit claims, benefit from Defendant's business practice changes.

### 5.    There Is No Opposition to The Settlement

Finally, the Court should weigh whether there exists opposition to the Settlement. *Jiffy Lube*, 927 F.2d at 158-59. After a publicized and substantial direct notice campaign, no Settlement Class Members submitted an objection. Coates Decl. ¶ 5. As discussed above, the reaction of the Settlement Class to the Settlement has been extremely positive as *zero* objections were filed and only three (3) opt-outs were received, which represents less than 1% of the Settlement Class. *See* Kroll Decl. ¶ 18. Further, 6,079 claim forms were submitted to Kroll, which is a fulsome claims rate of 5.6% all roughly 108,000 Settlement Class Members and 7.5% the Class Members receiving direct Notice of the Settlement. Coates Decl. ¶ 5.

Therefore, the Settlement Class Members' significant support and participation in the Settlement weighs in favor of granting final approval.

**B.    The Court Should Finally Certify the Proposed Settlement Class**

Settlement classes are routinely certified in consumer data breach cases.[4] There is nothing unique about this case that would require the Court to find otherwise. Moreover, when this Court granted preliminary approval of the Settlement, it found it appropriate to preliminarily certify the Settlement Class. *See* ECF No. 42 ¶ 2-3.

The Settlement Class continues to fulfill for purposes of this settlement the Rule 23(a) and Rule 23(b) requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority asserted in the Motion for Preliminary Approval and which were preliminarily approved and deemed adequate by the Court. ECF No. 39; *see also*, ECF No. 42 ¶ 3. Because these circumstances remain unchanged since the Court granted preliminary approval, the Court should finally certify the Settlement Class for settlement purposes.

**C.    Notice to the Settlement Class Complied With Due Process And Rule 23**

The Court previously approved the Notice Plan proposed in this case and found it satisfied all requirements of due process and Rule 23. ECF No. 42. Through the individual

---

[4] *See, e.g., Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021) (Brinkema, J.); *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, No. CV JKB- 16-03025, 2019 WL 3183651 (D. Md. July 15, 2019); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. l:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. March 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector*, 142 S. Ct. 431 (2021), and *cert. denied sub nom. Watkins v. Spector*, 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 172-74 (D. Md. 2022) (certifying certain statewide classes; Rule 23(f) appeal granted).

notice efforts alone, the Notice Plan was successfully implemented and reached approximately 98.0% percent of the Settlement Class for whom Kroll had mailing addresses. *See* Kroll Decl. ¶ 12. The Settlement Website, www.hgdatasettlement.com, allows visitors to download the Long Notice, the Short Notice, the Claim form, and other Court documents such as the Motion for Preliminary Approval and Settlement Agreement, as well as allowing them to submit claims electronically, submit questions to the Settlement Administrator, find answers to frequently asked questions, view important dates and deadlines, and contact the Settlement Administrator. The Settlement Website received significant use from the Settlement Class as, to date, there have been 4,476 unique visitors to the Settlement Website. *Id*. ¶ 5.

The Notice Plan meets the requirements of Rule 23 and due process, as indicated by its reaching roughly 98.0% of the identified Settlement Class Members. *See, e.g.*, Federal Judicial Center, "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide" (2010) (notice that reaches between 70 and 95 percent of the class deemed effective).

This Notice Program was preliminarily approved by this Court and is consistent with notice programs approved by courts across the United States. *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud. Ctr., "Managing Class Action Litigation: A Pocket Guide or Judges", 27 (3d Ed. 2010); *Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022) (internal citation omitted); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Feinberg v. T. Rowe Price Grp., Inc.*, 610 F. Supp. 3d 758, 766 (D. Md. 2022) (notice acceptable where it "was either mailed or emailed to each class member, and the administrator also set up a dedicated website and toll-free number for class

members to access or call."). Thus, the Court should find that the Class received the best notice practicable under the circumstances in compliance with Rule 23 and due process.

### D. The Court Should Approve the Requested Attorneys' Fees, Expenses, And Service Awards

#### 1. The Requested Attorneys' Fees and Expenses are Reasonable

As demonstrated by Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses, and Class Representative Service Awards (ECF No. 44) and the Memorandum in Support (ECF No. 45), the requested attorneys' fees, costs, and expenses are reasonable and should be approved. In addition to seeking attorneys' fees in the amount of $533,333.33, Class Counsel requests an award of $16,793.84 for litigation costs and expenses reasonably and necessarily incurred by counsel in connection with this litigation. As demonstrated in the Motion for Fees and the accompanying declaration of Class Counsel, Class Counsel diligently and zealously pursued this litigation to achieve an excellent for the Plaintiffs and Settlement Class Members. *See* ECF No. 44-1; Coates Decl. ¶ 3.

As of October 25, 2024, Class Counsel and Plaintiffs' Counsel had devoted 476.26 hours to prosecuting this case, for a lodestar total of $346,461.58, and expenses in the amount of $16,793.84. *See* ECF No. 44-1 ¶ 17, Declaration of Terence R. Coates Exhibit 1 to Plaintiffs' Memorandum in Support of Motion for Award of Attorneys' Fees. At the time of filing Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses, and Class Representative Service Awards, the requested fee award and lodestar reflected a multiplier of 1.54. *Id.*

Since the filing of Plaintiffs' Motion for an Award of Attorneys' Fees, Expenses, and Class Representative Service Awards, Class Counsel and Plaintiffs' Counsel have accrued an additional 52.3 hours of work on this matter, representing an additional $42,825.37 in attorneys' fees. Coates Decl. ¶ 9-10. Thus, the total lodestar is now $389,286.95, which

represents a lodestar multiplier of roughly 1.37, with the final approval hearing still to come. *Id*.

### 2. Plaintiffs' Requested Service Awards are Reasonable

Plaintiffs have requested a $3,000 service award ("Service Awards") for each of the Settlement Class Representatives, totaling $15,000. Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (internal quotation omitted). In *Berry*, the Fourth Circuit stated that such awards are "fairly typical in class action cases" and upheld $5,000 service awards as within the district court's discretion "because the Class Representatives acted for the benefit of the class." *Id.* (citation omitted).

Courts in this district routinely grant service awards of greater than the requested amount. *See Brown*, 318 F.R.D. at 578-79 (citing *Cappetta v. GC Servs. LP*, No. 3:08-cv-288(JRS) (E.D. Va. Apr. 27, 2011); *Henderson v. Verifications Inc.*, No. 3:l l-cv-514, 2013 WL 1214678, at *4 (E.D. Va. Mar. 13, 2013); *Pitt v. Kmart Corp.*, No. 3:l l-cv-697, 2013 WL 12183659, at *3 (E.D. Va. May 24, 2013); *Conley v. First Tennessee Bank*, No. l:10-cv- 1247 (E.D. Va. Aug. 18, 2011) (each of the foregoing cases awarded a $5,000 service award to one or more named plaintiffs); *Ryals v. HireRight Solutions, Inc.*, No. 3:09-cv-625 (E.D. Va. Dec. 22, 2011) (awarding a $10,000 service award to each class representative). In determining the reasonableness of a service award, courts contemplate "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in

pursuing the litigation." *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, No. 3:14CV238 (DJN), 2016 WL 1070819, at *6 (E.D. Va. 2016) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, the Settlement Class Representatives have represented the Settlement Class appropriately, making the requested Service Awards suitable. Coates Decl. ¶ 11. Specifically, the Plaintiffs made themselves available to Class Counsel to assist with the investigation into their claims. *Id.* The Plaintiffs assisted Class Counsel and Plaintiffs' Counsel by providing information, which was necessary to the drafting of Plaintiffs' Consolidated Amended Class Action Complaint, and made themselves available throughout the negotiation process to offer information and insight, including reviewing and approving the settlement demand, final settlement amount, and Settlement Agreement. *Id.* The Settlement Class Representatives acted in the best interests of the Class. *Id.* The Court should therefore award Plaintiffs the reasonable and typical Service Awards in the amount of $3,000 each ($15,000 total).

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court enter an order finally approving the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), certifying the Settlement Class for purposes of judgment on the Settlement, and granting the request for attorneys' fees, expenses, and Class Representative Service Awards.

Dated:    January 20, 2025                    Respectfully submitted,

*/s/ Lee A. Floyd*
Lee A. Floyd, VSB #88459
Sarah G. Sauble VSB #94757
**BREIT BINIAZAN, PC**
2100 East Cary Street, Suite 310
Richmond, Virginia 23223

18

Telephone: (804) 351-9040
Facsimile: (804) 351-9170
*lee@bbtrial.com*
*sarah@bbtrial.com*

Terence R. Coates (pro hac vice)
Justin C. Walker (pro hac vice)
**MARKOVITS, STOCK &
DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*
*jwalker@msdlegal.com*

Courney L. Weiner (No. 96733)
**LAW OFFICE OF COURTNEY
WEINERPLLC**
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (202) 827-9980
*cw@courtneyweinerlaw.com*

David K. Lietz (pro hac vice)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLC**
5335 Wisconsin Avenue NW
Washington, D.C. 20015-2052
Telephone: (866) 252-0878
Facsimile: (202) 686-2877
*dlietz@milberg.com*

Kevin Laukaitis (pro hac vice)
**LAUKAITIS LAW LLC**
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Telephone: (215) 789-4462
*klaukaitis@laukaitislaw.com*
William B. Federman (pro hac vice)
**FEDERMAN & SHERWOOD**
10205 North Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
-and-

212 W. Spring Valley Road
Richardson, TX 75081
Telephone: (405) 235-1560
*wbf@federmanlaw.com*

*Attorneys for Plaintiffs and the Class*